UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

NO. 24-1063

**CAPTAIN ALBERT BROX, KIMBERLY FERNANDES, PAUL MENTON,
SONIA SIMONEAU, MARK ANDERSON, ANDREA SHEEDY,
JAMES BONDAREK, STEVEN ENNIS, CHRISTOPHER OVASKA,
JEFFREY D'AMARIO AND TIM RICHARDSON
Plaintiffs – Appellants,**

v.

**WOODS HOLE, MARTHA'S VINEYARD, AND NANTUCKET
STEAMSHIP AUTHORITY AND JANICE KENNEFICK
Defendants – Appellees.**

On Appeal from the United States District Court
for the District of Massachusetts

**BRIEF OF APPELLEES**

Keith H. McCown
Court of Appeals Bar No. 5859
Ryan W. Jaziri
Court of Appeals Bar No. 1203310
Jeffrey T. Collins
Court of Appeals Bar No. 1139870
MORGAN, BROWN & JOY, LLP
200 State Street, Suite 11A
Boston, MA 02109-2605
(617) 523-6666
kmccown@morganbrown.com
rjaziri@morganbrown.com
jcollins@morganbrown.com

Dated: June 13, 2024     Attorneys for Appellees

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Appellee/Defendant Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority is a public instrumentality of the Commonwealth of Massachusetts, organized and existing pursuant to the Acts of 1960, c. 701, as amended and established under the laws of the Commonwealth, and is not a nongovernmental corporation subject to certain disclosures under Federal Rule of Appellate Procedure Rule 26.1(a).

# **TABLE OF CONTENTS**

**Page(s)**

CORPORATE DISCLOSURE STATEMENT ..................................................... i

TABLE OF CONTENTS.......................................................................... ii

TABLE OF AUTHORITIES ................................................................... iv

STATEMENT OF THE ISSUES................................................................1

STATEMENT OF THE CASE................................................................1

STATEMENT OF FACTS ......................................................................4

    I.    Relevant Procedural Background..................................................4

    II.   Relevant Factual Background ......................................................5

SUMMARY OF ARGUMENT ................................................................8

APPLICABLE STANDARD OF REVIEW ...........................................12

ARGUMENT ......................................................................................13

    I.    The District Court Did Not Abuse Its Discretion In Denying
        Appellants' Motion For Preliminary Injunctive Relief...............13

        A.    The District Court Properly Found That Appellants Had
            No Likelihood Of Success On The Merits Of Their First
            Amendment Free Exercise Claim. ......................................13

            1.    The Policy Does Not Prohibit Religious Conduct
                While Permitting Secular Conduct that Undermines
                the Authority's Interests in a Similar Way....................14

                a.    The Policy is Generally Applicable Under *Mills*.................14

                b.    *Lowe* Supports Appellees' Position because
                    the "Factual Development" Missing from *Lowe*
                    is Present Here. ..................................................17

# TABLE OF CONTENTS
## (Continued)

Page(s)

    2. The Policy Does Not Provide a Mechanism for "Individualized Exemptions.".................................25

       a. Appellants Have Waived this Argument. ............................25

       b. The Policy is Not "Wrought with Secular Individualized Exemptions." ...............................26

    3. Rational Basis Review is Easily Satisfied....................................31

    4. The Policy Survives Strict Scrutiny because it Serves a Compelling Interest and is Narrowly Tailored........................32

  B. Appellants Cannot Demonstrate Irreparable Harm.............................36

  C. The Balance of Equities and Public Interest Favor Denial of the Requested Injunction......................................40

II. The District Court Did Not Abuse Its Discretion By Taking Judicial Notice Of Certain Facts Relative To COVID-19. .........................41

CONCLUSION ...................................................................43

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................................45

CERTIFICATE OF SERVICE ............................................................46

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.C. by Waithe v. McKee*,
  23 F.4th 37 (1st Cir. 2022)................................................................42

*Ansys, Inc. v. Computational Dynamics North America, Ltd.*,
  595 F.3d 75 (1st Cir. 2010)...............................................................12

*Bronx Household of Faith v. Bd. of Educ.*,
  331 F.3d 342 (2d Cir. 2003) .............................................................37

*Brox v. Woods Hole, Martha's Vineyard & Nantucket
Steamship Authority*,
  83 F.4th 87 (1st Cir. 2023)..........................................................*passim*

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*,
  370 F.3d 151 (1st Cir. 2004)..............................................................37

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993)....................................................................13, 36

*Does 1-6 v. Mills*,
  16 F.4th 20 (1st Cir. 2021)..........................................................*passim*

*Fulton v. City of Philadelphia*,
  141 S. Ct. 1868 (2021)................................................................*passim*

*Garrett v. Murphy*,
  17 F.4th 419 (3rd Cir. 2021) .............................................................42

*Gent v. CUNA Mut. Ins. Soc'y*,
  611 F.3d 79 (1st Cir. 2010)...............................................................42

*Harris v. Univ. of Massachusetts, Lowell*,
  2021 WL 3848012 (D. Mass Aug. 27, 2021) ....................................40

*Jacobson v. Massachusetts*,
  197 U.S. 11 (1905)...........................................................................31

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

**Cases**

*Kane v. De Blasio*,
19 F.4th 152 (2d Cir. 2021) ..........................................................38, 39

*Lowe v. Mills*,
68 F. 4th 706 (1st Cir. 2023)......................................................*passim*

*Mass. Coal. of Citizens with Disabilities v. Civ.*
*Defense Agency & Office*,
649 F.2d 71 (1st Cir. 1981)..................................................................36

*McClure v. Galvin*,
386 F.3d 36 (1st Cir. 2004)..................................................................13

*Noonan v. Wonderland Greyhound Park Realty LLC*,
723 F. Supp. 2d 298 (D. Mass. 2010)..................................................25

*Phillips v. City of New York*,
775 F.3d 538 (2d Cir. 2015) ...............................................................31

*Pietrangelo v. Sununu*,
2021 WL 4487850 (1st Cir. Oct. 1, 2021).........................................42

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
141 S. Ct. 63 (2020)......................................................................*passim*

*Tandon v. Newsom*,
141 S. Ct. 1294 (2021)......................................................15, 20, 33

*Together Employees v. Mass General Brigham, Inc.*,
32 F.4th 82 (1st Cir. 2022)...................................................13, 37, 39

*U.S. v. Bello*,
194 F.3d 18 (1st Cir. 1999).................................................................41

*U.S. v. Donziger*,
2020 WL 5152162 (S.D.N.Y. 2020)...................................................40

Page(s)

**Cases**

*United States v. Vanvliet*,
542 F.3d 259 (1st Cir. 2008)...................................................25

*Vaqueria Tres Monjitas, Inc. v. Irizarry*,
587 F.3d 464 (1st Cir. 2009)...................................................36

*Ward v. Polite*,
667 F.3d 727 (6th Cir. 2012) ..................................................25

*We The Patriots USA, Inc. v. Connecticut Office
of Early Childhood Development*,
76 F.4th 130 (2d Cir. 2023) ...................................................27

*We The Patriots USA, Inc. v. Hochul*,
17 F.4th 266 (2d Cir. 2021) ...........................................*passim*

*Wills v. Brown Univ.*,
184 F.3d 20 (1st Cir. 1999)....................................................25

*Workman v. Mingo Cnty. Bd. of Educ.*,
419 F. App'x 348 (4th Cir. 2011)...........................................32

**Statutes**

M.G.L. c. 151B ........................................................................30

**Rules**

Fed. R. App. P. 32(a)(5)...........................................................45

Fed. R. App. P. 32(a)(6)...........................................................45

Fed. R. App. P. 32(a)(7)(B) .....................................................45

Fed. R. App. P. 32(a)(7)(B)(iii) ...............................................45

Fed. R. Civ. P. 12(b)(6)......................................................18, 19

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

## Rules

Fed. R. Evid. 201 ...................................................................................41

Fed. R. Evid. 201(b) ..............................................................................41

## Other Authorities

Governor Baker's Executive Order No. 595 ...................................*passim*

U.S. Constitution First Amendment ..............................................*passim*

## STATEMENT OF THE ISSUES

1.  Did the District Court abuse its discretion by denying Appellants' Motion for Preliminary Injunctive Relief, ruling that:

    A.  Appellants have no likelihood of success on the merits of their Free Exercise claim, and

    B.  Appellants would not suffer irreparable harm in the absence of an injunction, and

    C.  The balance of equities and the public interest weigh in the Authority's favor.

2.  Did the District Court abuse its discretion by taking judicial notice of certain facts about COVID-19?

## STATEMENT OF THE CASE

The Plaintiffs-Appellants ("Appellants") have now appealed the second of two District Court orders, each denying their preliminary injunction request. The Appellants sought to enjoin the application of the COVID-19 Vaccination Verification Policy ("Policy") implemented by their employer, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority ("Authority"). For the second time, the District Court has exercised its discretion and denied the injunction request on numerous grounds. The Appellants seek reversal of that order.

In response to the extraordinary conditions created by the COVID-19 pandemic, the Policy required employees to be vaccinated against COVID-19 or face discharge, but allowed certain exemptions, including an exemption based upon religious beliefs. The Appellants, employees of the Authority, objected to

vaccination and sued in state court, alleging various claims and seeking an injunction against the application of the Policy.[1] Appellants assert several claims, including that the Policy violated their Free Exercise rights under the First Amendment. The Authority removed the case to the District Court based on federal claim jurisdiction.

After removal, Appellants filed a Renewed Motion for Preliminary Injunctive Relief. On March 10, 2022, the District Court for the first time denied Appellants' Motion for Preliminary Injunctive Relief, ruling that Appellants are unlikely to succeed on the merits of any of their claims, they cannot show irreparable harm in the absence of preliminary relief, and the balance of equities and the public interest weigh in the Authority's favor.

Appellants appealed the District Court's ruling to this Court. On October 6, 2023, this Court affirmed the District Court's decision in all respects except one: the analysis of the likelihood of success of Appellants' Free Exercise claim. On remand, this Court instructed the parties and the District Court to consider the relevant facts and arguments under the applicable legal framework, including how the decisions in *Does 1-6 v. Mills*, 16 F.4th 20, 29 (1st Cir. 2021) ("*Mills*") and *Lowe v. Mills*, 68 F. 4th 706 (1st Cir. 2023) ("*Lowe*") bear on Appellants' request

---

[1] The named defendants ("Appellees") were the Authority and Janice Kennefick, the Authority's Director of Human Resources.

for relief. *Brox v. Woods Hole, Martha's Vineyard & Nantucket Steamship Authority*, 83 F.4th 87, 100 (1st Cir. 2023).[2] Following further briefing, on December 11, 2023, the District Court again denied Appellants' Renewed Motion for Preliminary Injunction, holding that the Policy is neutral and generally applicable, and easily satisfies rational basis review. The District Court further held that even if strict scrutiny applied, the Policy would survive. For the second time, the District Court has not abused its discretion and its decision should be affirmed.

Appellants have not met their burden to establish a likelihood of success on the merits of their Free Exercise claim. The Policy is neutral, as Appellants concede, and is generally applicable under *Mills*, *Lowe*, and other relevant case law. The Policy does not invite the Authority to consider the particular reasons for a person's conduct by providing "a mechanism for individualized exemptions," nor does it prohibit religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.

Rational basis review therefore applies, and is easily met. The Policy is rationally related to the Authority's interest in protecting the health and safety of its employees and customers. Even if strict scrutiny applied, the Policy would

---

[2] Despite this clear instruction, Appellants failed to address *Lowe* and made only one passing reference to *Mills* in their Renewed Motion before the District Court.

survive. It is supported by a compelling government interest and is narrowly tailored.

Additionally, each of the other three factors in the preliminary injunction analysis – irreparable harm, the balance of equities and the public interest – weigh heavily in favor of Appellees. Lastly, Appellants' arguments regarding judicial notice have already been rejected by this Court, and have no merit.

The District Court did not abuse its discretion by denying Appellants' Renewed Motion for Preliminary Injunctive Relief regarding Appellants' Free Exercise claim. The Order should stand in all respects.

## STATEMENT OF FACTS

### I.  Relevant Procedural Background

On February 11, 2022, Plaintiffs filed a Complaint with the Massachusetts Superior Court for Barnstable County. With the Complaint, Appellants filed a Motion for Temporary Restraining Order, as well as an *Ex-Parte* Motion for Temporary Restraining Order seeking to enjoin the Authority from terminating Appellants' employment. On February 11, 2022, the Superior Court allowed Appellants' *Ex-Parte* Motion for Temporary Restraining Order.

On February 14, 2021, Appellees removed the case to the District Court. On February 18, 2022, Appellants renewed their Motion for Preliminary Injunctive Relief in federal court. On March 10, 2022, the District Court issued its Order

denying Appellants' Motion for Preliminary Injunctive Relief. On April 7, 2022, Appellants filed their Notice of Appeal.

On October 6, 2023, this Court affirmed the District Court's denial of preliminary injunctive relief as to Counts I, III, and IV and vacated the District Court's denial as to Count II, directing the court to consider the appropriate level of scrutiny to apply to plaintiffs' free exercise claims and to determine "how [the First Circuit's] decisions in *Mills* and *Lowe* bear on appellants' request for such relief."

On December 11, 2023, the District Court issued its decision denying Appellants' Renewed Motion for Preliminary Injunction. On January 18, 2024, Appellants filed their Notice of Appeal.

## II.   <u>Relevant Factual Background</u>

The Authority provides the only ferry service to the islands of Martha's Vineyard and Nantucket ("the Islands") that carries both passengers and vehicles. (Joint Appendix ("JA") p. 21, ¶ 5). The Authority serves a complex clientele including year-round residents of the Islands who depend on the ferries for all commerce and transportation to and from the mainland, and a significant seasonal population and tourist group. (JA pp. 21-22, ¶¶ 7, 9). The Authority serves members of the public from all walks of life, including young children, the elderly, and the immunocompromised. (JA p. 22, ¶ 11). Many Authority employees,

including each of the Appellants, regularly interact with fellow employees, customers and/or vendors as part of their core job responsibilities. (JA p. 24, ¶ 20).

Given the size of its workforce and the nature of its business, the Authority—like many employers during the pandemic—managed several COVID-19 infections and/or outbreaks among its staff and crews. (JA p. 23, ¶ 13). Infections among the Authority's staff resulted in substantial costs to the Authority. (*Id.* at ¶ 14). The vessels operated by the Authority contain confined spaces that make regular social distancing impractical and/or impossible. (*Id.* at ¶ 17).

On January 3, 2022, the Authority issued the Policy, which was consistent with Governor Baker's Executive Order No. 595 (the "Order"), to all of its employees. (JA p. 26, ¶ 27). The Policy required full vaccination by February 16, 2022. (*Id.* at ¶ 28). The Policy also states that employees who fail to provide the required verification of vaccination or who are not approved for an exemption would be subject to discipline, up to and including termination. (*Id.* at ¶ 30).

The Policy states that the Authority "requires all of its employees to provide documentation that they have received COVID-19 vaccination in order to prevent viral infection and transmission." (JA p. 84). Similar to the Order, which was established in order to "ensure the health and safety of all Massachusetts workers and residents," (JA p. 59), the Policy was implemented in order to protect the

safety and well-being of its employees, customers, vendors, and the communities it services by preventing and/or mitigating the spread of COVID-19. (JA p. 22, ¶¶ 11-12).

The Policy sets forth a process for employees to request medical or religious exemptions. Medical exemptions applied to employees "who verify and document that the vaccine is medically [contraindicated], which means administration of the COVID-19 vaccine to that individual would likely be detrimental to the individual's health . . . ." (JA p. 86, § IV.6.a.). The Policy provides that "[d]ocumentation must be provided from an employee's medical/health care provider to support the request." (*Id.*) Exemptions due to a sincerely held religious belief were evaluated based on whether the employee is able to perform their essential job functions with a reasonable accommodation that is not an undue burden on the Authority. (JA p. 87, § IV.6.b.).

Each of the eleven (11) Appellants requested ***permanent*** religious accommodations not to become vaccinated at all, or sought accommodations that would avoid vaccination altogether – e.g., masking, social distancing and personal hygiene measures. (JA p. 27, ¶ 35). The Authority determined that the requested permanent accommodations could not be made for these employees, without undue hardship to the Authority, as each role required significant in-person interaction with others. (JA pp. 27-30, ¶¶ 35-51).

Greg Manchester, another Authority employee, sought a ***temporary*** medical exemption ***due to a medical contraindication*** pursuant to the Policy. (JA pp. 11, 13). Mr. Manchester's health care provider from Southcoast Pulmonary Care provided a noted dated January 4, 2022, stating: "Given recent COVID-19 infection per CDC recommendations would advise against COVID-19 vaccination for the next 3 months." (JA p. 13). This recommendation from Mr. Manchester's medical provider, which in turn was based on CDC guidance, convinced the Authority to grant Mr. Manchester's request for a ***temporary*** medical exemption due to his medical contraindication. (JA p. 19). After three (3) months, however, Mr. Manchester had not become vaccinated. (*Id.*) Thus, Mr. Manchester's employment was terminated. (*Id.*)

Four (4) Appellants (Mr. Ennis, Mr. Menton, Mr. Ovaska and Mr. Brox) are now vaccinated and remain employed at the Authority. (JA p. 31 at ¶¶ 57-60). The remaining seven (7) Appellants chose not to be vaccinated and were terminated pursuant to the Policy.

## SUMMARY OF ARGUMENT

The District Court did not abuse its discretion and properly denied Appellants' Renewed Motion for Preliminary Injunctive Relief because Appellants were unable to show a likelihood of success on the merits for their claim under the Free Exercise Clause of the First Amendment. Additionally, Appellants were

unable to show a likelihood that they would suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, or that the injunctive relief requested was in the public interest.

As the District Court properly determined, the Policy is neutral and generally applicable under *Mills*, *Lowe*, and other relevant case law. Appellants concede that the Policy is neutral. The Policy is also generally applicable as it does not invite the Authority to consider the particular reasons for a person's conduct by providing "a mechanism for individualized exemptions"—an argument that has been waived by Appellants in any event—nor does it prohibit religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.

First, the Policy indisputably contains one non-religious exemption. This requires an objective evaluation from a medical provider as to whether the employee is medically contraindicated and, therefore, unable to safely take the vaccine. The Policy plainly is not "wrought with only secular individualized exemptions" and does not leave "sole discretion" to the Authority regarding its implementation.

Second, Appellants cannot demonstrate that the Authority's decision to grant Mr. Manchester's medical exemption request "permits secular conduct that undermines the government's asserted interests in a similar way" under *Mills* or

*Lowe*. No evidence can demonstrate that any religious exemption request would advance the Authority's goal of protecting the health and safety of its employees and customers in any manner, whereas Mr. Manchester's temporary medical exemption request did advance that goal with respect to Mr. Manchester's health.

Additionally, the precise factual development is present that was missing in *Lowe* (decided at the 12(b)(6) stage), as the Appellants' eleven (11) religious exemptions and Mr. Manchester's single, temporary medical exemption are not comparable in terms of the risks they pose to health and safety. Mr. Manchester's single, 3-month medical exemption is significantly more limited in number and time than the eleven (11) permanent religious exemptions sought by Appellants. Appellants' exemption requests exponentially and indefinitely increase the chance of COVID-19 spread. This aggregate data—not a comparison between an individual employee and another—is critical to the comparability analysis under *Lowe*.

Rational basis review therefore applies, and is easily met. The Policy is rationally related to the Authority's interest in protecting the health and safety of its employees and customers.

Even if strict scrutiny applied, the Policy would still survive. It is supported by a compelling government interest and is narrowly tailored. Stemming the spread of COVID–19 is unquestionably a compelling interest. The Authority's alternative

measures, including cleaning, social distancing, daily employee health screening, additional payroll expenses and overtime, among other measures, including over $1.6 million spent on COVID-19 related expenses, was not enough to curb outbreaks within the Authority's workforce. The Authority considered Appellants' alternatives to the vaccine, including weekly testing and mask wearing, but determined that these approaches, in lieu of vaccination, would not sufficiently mitigate the spread of COVID-19. The Policy resulted from this careful, deliberate and interactive process only after other non-pharmaceutical interventions failed, rendering it narrowly tailored.

The Policy is also not overinclusive. It applies to all Authority employees (unless legitimately exempted) because of their direct interaction with other employees and customers. Nor is the Policy underinclusive. The limited 3-month exemption granted to Mr. Manchester was based on objective evidence that the vaccine would harm his health and safety during those three months. The Authority's actions in all respects have been narrowly tailored to promoting its compelling interest in curbing the spread of COVID-19, and survive strict scrutiny.

Each of the other factors in the preliminary injunction analysis – irreparable harm, the balance of equities, and the public interest – weigh heavily in favor of the Authority. In particular, the Appellants cannot meet the irreparable harm requirement because their alleged economic harms – losing income and being

without a job – can be remedied through monetary damages, including backpay. The Authority never forced any employee, including Appellants, to take the vaccine involuntarily. Rather, the Authority gave the Appellants the choice of either complying with the Policy and getting vaccinated, or not continuing to work for the Authority. The resulting "harm" to the Appellants is not "irreparable" given the Appellants' ability to seek monetary damages as a remedy.

Lastly, Appellants' arguments regarding judicial notice have already been addressed and rejected by this Court, and have no merit. The Court did not abuse its discretion in taking judicial notice of certain facts relative to COVID-19. The challenged facts were not subject to reasonable dispute, in that they were either (a) generally known within the territorial jurisdiction of the trial court, or (b) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

For all the reasons set forth herein, the District Court's Order denying Appellants' Renewed Motion for Preliminary Injunctive Relief should be upheld.

## <u>APPLICABLE STANDARD OF REVIEW</u>

This Honorable Court has a very strict standard favoring affirmance of a District Court denying preliminary injunctive relief: it "will reverse such a denial only if the district court mistook the law, clearly erred in its factual assessments, or otherwise abused its discretion in granting the preliminary injunction." *Ansys, Inc.*

*v. Computational Dynamics North America, Ltd.*, 595 F.3d 75, 77-78 (1st Cir. 2010) *citing McClure v. Galvin,* 386 F.3d 36, 41 (1st Cir. 2004). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Together Employees v. Mass General Brigham, Inc.*, 32 F.4th 82, 85 (1st Cir. 2022).

## ARGUMENT

I. **The District Court Did Not Abuse Its Discretion In Denying Appellants' Motion For Preliminary Injunctive Relief.**

A. **The District Court Properly Found That Appellants Had No Likelihood Of Success On The Merits Of Their First Amendment Free Exercise Claim.**

Courts review state action that burdens religious exercise – but that is neutral with respect to religion and generally applicable – only to ensure that it has a rational basis. *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876 (2021). Such a neutral and generally applicable action need not be narrowly tailored to serve a compelling governmental interest, even if it incidentally burdens religious exercise. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993).

"Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Mills*,

*supra*, 16 F.4th at 29. "Moreover, a law is not generally applicable if it either 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions,' . . . or 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Brox*, *supra*, 83 F.4th at 93.

Appellants concede that the Policy is neutral. As set forth below, the Policy is also generally applicable. Thus, rational basis review applies. However, even if strict scrutiny applied, the Policy would still survive. It is supported by a compelling government interest and is narrowly tailored.

### 1. The Policy Does Not Prohibit Religious Conduct While Permitting Secular Conduct that Undermines the Authority's Interests in a Similar Way.

On remand, this Court instructed the parties and the District Court to consider the relevant facts and arguments under the applicable legal framework, including how the decisions in *Mills* and *Lowe* bear on Appellants' request for relief. Based on these cases, as well as other applicable precedent, the risks of granting Mr. Manchester a temporary medical exemption are not comparable to those of granting Appellants their requested permanent religious accommodations.

#### a. The Policy is Generally Applicable Under *Mills.*

*Mills* involved a free-exercise-based challenge to the denial of a preliminary injunction regarding the Maine Center for Disease Control's mandatory

vaccination policy. *Brox*, *supra*, 83 F.4th at 93, *citing Mills*, *supra*, 16 F.4th at 24-29. The policy at issue in *Mills* required healthcare workers in Maine to obtain a Covid-19 vaccination "unless they could show that vaccination was 'medically inadvisable.'" *Id.* "[H]ealthcare facilities could accommodate some workers with religious objections to the COVID-19 vaccine 'provided that the accommodations did not allow unvaccinated workers to enter healthcare facilities.'" *Mills*, *supra*, 16 F.4th at 28.

In upholding the denial of the requested injunction, this Court concluded that the 'likelihood of success' factor pointed against granting the relief. The rule was "facially neutral" and no evidence suggested that the state had "singled out religious objections to the vaccine 'because of their religious nature.'" *Brox*, *supra*, 83 F.4th at 93-94. Additionally, the rule was generally applicable even though it included a medical but not a religious exemption. *Id.* There was no evidence at the preliminary injunction stage showing that the rule "permitted 'secular conduct that undermine[d] the government's asserted interests in a similar way.'" *Id.*

This Court distinguished the Supreme Court's decision in *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) – which involved the prohibition of religious gatherings while allowing secular activities. The medical exemption in *Mills* "align[ed] with the State's interest in protecting public health and, more specifically, medically vulnerable individuals from illness and infectious diseases,

while non-medical exemptions do not." *Id.* at 96. Moreover, providing workers with medically contraindicated vaccines would "threaten the health of those workers and thus compromise both their own health and their ability to provide care." *Mills*, *supra*, 16 F.4th at 31. "Thus, carving out an exception for those people to whom that physical health risk applies furthers Maine's asserted interests in a way that carving out an exemption for religious objectors would not." *Id.*

In the present matter, the Policy was created to prevent viral infection and transmission in order to protect the health and safety of the Authority's employees and customers. The medical exemption contained in the Policy specifically applies to "[e]mployees who verify and document that the vaccine is medically [contraindicated], which means administration of the COVID-19 vaccine to that individual ***would likely be detrimental to the individual's health*** . . . ." (JA p. 26, ¶ 29) (emphasis added). As in *Mills*, the Authority's medical exemption exists because "the rule itself poses a physical health risk to some who are subject to it" – namely, those who were medically contraindicated – which can be "serious or life threatening." *Mills*, 16 F.4th at 31 n.8.

Providing a medical exemption, and applying it in Mr. Manchester's situation, furthered the Authority's goal of protecting the health and safety of its employees. The medical note provided by Mr. Manchester specifically stated that "[g]iven recent COVID-19 infection per CDC recommendations would advise

against COVID-19 vaccination for the next 3 months." This ***objective evidence*** from a medical professional ***advising against*** vaccination for this limited 3-month period made clear that a vaccination at that point in time would be detrimental to Mr. Manchester's health. Pursuant to the Policy, the Authority granted this time-limited, narrow, and objectively health-related request.

Appellants cannot demonstrate that the Authority's decision to grant Mr. Manchester's medical exemption request "permits secular conduct that undermines the government's asserted interests in a similar way" under *Mills*. No evidence can demonstrate that any religious exemption request would advance the Authority's goal of protecting the health and safety of its employees and customers in any manner. Mr. Manchester's medical exemption request, on the other hand, did advance that goal with respect to Mr. Manchester's health. Requiring him to take the vaccine during the period he was medically contraindicated could have been detrimental to his health.

Accordingly, the Policy is generally applicable under the reasoning set forth in *Mills*.

### b. *Lowe* Supports Appellees' Position Because the "Factual Development" Missing from *Lowe* is Present Here.

*Lowe* involved a challenge to the same policy at issue in *Mills* on the ground that the policy violated the Free Exercise Clause by allowing medical but not

religious exemptions and, as a result, was not generally applicable. *Lowe* was decided strictly on the pleadings and at the motion to dismiss stage under Rule 12(b)(6). This Court explained that the "decision on the plaintiffs' preliminary injunction appeal [in *Mills*] does not control the outcome in [*Lowe*] because the different procedural postures implicate different burdens, standards of review, and factual records." *Lowe*, *supra*, 68 F. 4th at 712 n.10. In other words, the "extraordinary remedy" of a preliminary injunction – at issue in *Mills* and in the present matter – was not at issue in *Lowe*.

This Court concluded that it was "plausible, in the absence of any factual development" that the policy at issue was not generally applicable based on the allegations that the mandate "allows some number of unvaccinated individuals to continue working in healthcare facilities based on medical exemptions while refusing to allow individuals to continue working while unvaccinated for religious reasons." *Id.* at 714.

This Court emphasized the "narrowness of [its] holding." *Id.* at 718. The court did "not determine what standard of scrutiny should ultimately apply to the free exercise claim. Nor do we decide whether the Mandate survives the applicable level of scrutiny. Those questions are not before us. We hold only that, applying the plausibility standard applicable to Rule 12(b)(6) motions and drawing all

reasonable inferences from the complaint's factual allegations in the plaintiffs' favor, the complaint states a claim under the Free Exercise Clause." *Id.*

In *Lowe*, the State asserted that the medical exemption in its mandate was "fundamentally different . . . [from] a religious exemption because a medical exemption aligns with the State's interest in protecting public health and, more specifically, medically vulnerable individuals from illness and infectious diseases, while non-medical exemptions . . . do not." *Id.* at 716. In ruling on the motion to dismiss, however, this Court held that "drawing all reasonable inferences in the plaintiffs' favor," it is "plausible" that "a version" of the Mandate that did not include a medical exemption could do a better job of serving the State's asserted public interest goals. *Id.*

Given the absence of any facts outside of the complaint, it remained plausible that "the Mandate's medical exemption creates comparable risks to those that would be created by a religious exemption . . . ." *Id.* at 717. As a result, the plaintiffs' free exercise claim in *Lowe* was not dismissed under the especially broad and generous standards of Rule 12(b)(6).

Significantly, however, this Court noted that "it is entirely possible that ***additional facts*** might show that the two types of exemptions are not comparable" for purposes of the general applicability analysis. *Id.* at 715. "For example (and not by way of limitation), it may be that medical exemptions are likely to be ***rarer,***

***more time limited, or more geographically diffuse*** than religious exemptions, such that the two exemptions would not have comparable health effects." *Id.* (emphasis added).

This Court cited *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 287-88 (2d Cir. 2021), where United States Court of Appeals for the Second Circuit ("Second Circuit") upheld the denial of a preliminary injunction involving a similar vaccine mandate. The Second Circuit held that the State of New York issued its policy containing a medical exemption "not because it determined that the governmental interests it seeks to advance are worthy of being pursued only against conduct with a religious motivation . . . ***but because applying the vaccination requirement to individuals with medical contraindications and precautions would not effectively advance those interests***. Indeed, applying the vaccine to individuals in the face of certain contraindications, depending on their nature, could run counter to the State's "interest in protecting the integrity and ethics of the medical profession." *Id.* at 285 (citations omitted; emphasis added; internal quotation marks omitted).

In *Hochul*, the Second Circuit further stated: "Importantly, the State has also presented evidence that raises the possibility that the exemptions are not comparable in terms of the 'risk' that they pose. *See Tandon*, 141 S. Ct. at 1296. It notes that the medical exemption is defined to be ***limited in duration***, as the

vaccine requirement is 'inapplicable only until such immunization is found no longer to be detrimental to such personnel member's health.'" *Id.* at 286 (emphasis added). "In contrast, a sincerely held religious belief that vaccination is inconsistent with one's religion is ***unlikely to change to permit vaccination in the future*** . . . ." *Id.* (emphasis added). Moreover, the "statistics provided by the State further indicate that medical exemptions are likely to be ***more limited in number*** than religious exemptions, and that high numbers of religious exemptions appear to be ***clustered in particular geographic areas***." *Id.* (emphasis added). The Second Circuit concluded that "[a]s a result, it may be feasible for healthcare entities to manage the COVID-19 risks posed by a ***small set of objectively defined and largely time-limited medical exemptions***. In contrast, it could pose a significant barrier to effective disease prevention to permit a ***much greater number of permanent religious exemptions***." *Id.* (emphasis added).

*Lowe* relied upon *Hochul* in "reject[ing] the plaintiffs' apparent view that the only relevant comparison is between the risks posed by any one individual who is unvaccinated for religious reasons and one who is unvaccinated for medical reasons." *Lowe*, *supra*, 68 F.4th at 716. Instead, "Supreme Court precedent 'suggests the appropriateness of considering aggregate data about transmission risks.'" *Id.*; *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66-67 (2020) (comparing a "large store in Brooklyn that could 'literally have

hundreds of people shopping there on any given day'" with a "nearby church or synagogue [that] would be prohibited from allowing more than 10 or 25 people inside"). But "absent factual development" in *Lowe*, dismissal at the 12(b)(6) stage was unwarranted. *Lowe*, *supra*, 68 F.4th at 716.

Here, the precise factual development is present that was missing in *Lowe*. The sole medical exemption that Appellants rely upon to meet their burden of establishing a likelihood of success on their Free Exercise claim, as well as their burden establishing that strict scrutiny should apply, is the medical exemption request submitted by Mr. Manchester. The Appellants' eleven (11) religious exemptions and Mr. Manchester's single medical exemption are not comparable in terms of the risks they pose to health and safety. One type of exemption (medical) is significantly more limited in number than the other type of exemption (religious), the latter of which would result in an eleven-fold chance of spreading the disease. The two (2) types of exemptions are even less comparable given the ***limited three-month duration*** of Mr. Manchester's medical exemption. In contrast, the eleven (11) religious exemptions sought by the Appellants were permanent, exponentially and indefinitely increasing the chance of COVID-19 spread by these eleven (11) individuals.

The facts involving Mr. Manchester's medical exemption request fall squarely within *Hochul*. The comparison is indisputably between ***one (1)***

***objectively defined and <u>time-limited</u> medical exemption (based on the
individual's health and safety)*** versus ***eleven (11) <u>permanent</u> religious
exemptions (not based on any individual's health and safety)***, the latter of which
would undoubtedly create a much more "significant barrier to effective disease
prevention." *Hochul*, *supra*, 17 F.4th at 286. This ***aggregate data***—not a
comparison between an individual employee and another—is critical to the
comparability analysis. *Lowe*, *supra*, 68 F.4th at 715-16.

The record also establishes that the Appellants all work within the same
geographic location, namely, onboard the Authority's vessels or shoreside on
Authority property. (JA pp. 28-29, ¶¶ 40-49). Appellants operate within the same
geographic space, which creates another significant barrier to the Authority in
terms of disease prevention and/or mitigation. *See Lowe*, *supra*, 68 F.4th at 715-16.

Additionally, as explained above, the Authority's decision to grant Mr.
Manchester's medical exemption request was based ***solely on objective medical
judgment***—the note from Mr. Manchester's medical provider. "That physicians
and nurse practitioners must use their medical judgment to determine whether a
particular individual has a contraindication or precaution against receiving the
vaccine does not render the exemption discretionary." *Hochul*, *supra*, 17 F.4th at
289. Rather, the Policy "provides for an objectively defined category of people to
whom the vaccine requirement does not apply: employees who present a

certification from a physician or certified nurse practitioner attesting that they have a pre-existing health condition that renders the vaccination detrimental to their health, in accordance with generally accepted medical standards . . . for the period during which the vaccination remains detrimental to their health." *Id.*

These additional facts, which were not present in *Lowe* at the 12(b)(6) stage, have been established here – namely, that the purportedly "comparable" medical exemption request from Mr. Manchester is much rarer, significantly more time-limited, and more geographically insignificant than the eleven (11) religious exemption requests submitted by Appellants. Accordingly, *Lowe* supports the District Court's decision that Appellants are unlikely to succeed on the merits of their Free Exercise claim.

Lastly, in implementing the Policy, the Authority was acting in a managerial capacity and not as a regulator. Appellants' arguments regarding the lack of a "democratic process" in instituting the Policy are inapposite, as the Authority was not acting as a legislature or regulator—it is an employer implementing a workplace policy.[3]  Given that the Authority was acting in a managerial capacity, and not as a regulator, the Authority should be afforded greater deference with respect to the Free Exercise analysis. *See Fulton*, *supra*, 141 S. Ct. at 1878.

---

[3] Additionally, the Authority negotiated the Policy with the Appellants' Union for many months prior to its implementation, and the Union specifically agreed to the terms set forth in the Policy. (JA pp. 25, 27 ¶¶ 25, 33).

Appellants have failed to establish that the Policy prohibits religious conduct while permitting secular conduct that undermines the Authority's interests in a similar way. Thus, the Policy is generally applicable.

### 2. The Policy Does Not Provide a Mechanism for "Individualized Exemptions."

#### a. Appellants Have Waived this Argument.

At the outset, Appellants have waived their argument that the Policy purportedly created a "system of individualized exemptions" to be granted on a "case-by-case, discretionary basis." The District Court properly concluded that the Appellants' Renewed Reply was the first time that they advanced this argument. "[T]heories offered for the first time in the *reply* brief are not preserved." *Wills v. Brown Univ.*, 184 F.3d 20, 27 (1st Cir. 1999); *Noonan v. Wonderland Greyhound Park Realty LLC*, 723 F. Supp. 2d 298, 349 (D. Mass. 2010) ("The purpose of a reply memorandum is not to file new arguments that could have been raised in a supporting memorandum."); *cf. United States v. Vanvliet*, 542 F.3d 259, 265 n.3 (1st Cir. 2008) ("Arguments raised for the first time in a reply brief are waived.").

Appellants indisputably did not raise this argument in the principal brief supporting their Renewed Motion. Indeed, on appeal, Appellants concede that they did not raise this argument in their principal brief, instead relying on "prior briefing" to the District Court. Appellants rely on their citation to *Ward v. Polite*, 667 F.3d 727, 733 (6th Cir. 2012) in their *reply* brief from their *initial* Motion for

Preliminary Injunction—not the Renewed Motion presently on appeal. This one-sentence citation, which contains no analysis and is found in a reply brief from an entirely separate motion, is insufficient to establish that Appellants properly raised this issue before the District Court.

Additionally, Appellants' claim that they incorporated prior briefing from their initial Motion for Preliminary Injunction is incorrect and immaterial. Appellants simply incorporated the "familiar factual background" set forth in this Court's first decision and Appellants' prior briefs, not any analysis or argument. Appellants had the full opportunity to raise any and all legal arguments in their Renewed Motion, and did articulate various arguments, but elected not to pursue this theory regarding "individualized exemptions." Under the well-established case law set forth above, Appellants have waived this argument.[4]

### b. The Policy is Not "Wrought with Secular Individualized Exemptions."

Should this Court consider this argument, it still must be rejected on the merits. This Court already dismissed a similar argument in its first decision, noting that Appellants "at times appear to be arguing that such demanding scrutiny applies because the Policy is 'wrought with only secular individualized

---

[4] Appellees were also denied any opportunity to respond to this argument before the District Court, because the Appellants failed to make this argument in their Renewed Motion, and first raised it in their reply.

exemptions.'" *Brox*, *supra*, 83 F.4th at 96. However, "that characterization of the Policy appears to be wrong, given that a medical exemption is the only non-religious exemption that the policy permits . . . ." *Id.*

In their Renewed Motion and on appeal, Appellants have not demonstrated that any other non-religious exemption exists. "No case in this circuit and no case of the Supreme Court holds that a single objective exemption renders a rule not generally applicable." *Mills*, *supra*, 16 F.4th at 30. The Policy indisputably contains one non-religious exemption, which requires an objective evaluation from a medical provider as to whether the employee is medically contraindicated and, therefore, unable to safely take the vaccine. The Policy plainly is not "wrought with only secular individualized exemptions."

"[W]here a law provides for an objectively defined category of people to whom the vaccination requirement does not apply, including a category defined by medical providers' use of their professional judgment, such an exemption affords no meaningful discretion to the State." *We The Patriots USA, Inc. v. Connecticut Office of Early Childhood Development*, 76 F.4th 130, 151 (2d Cir. 2023) (internal quotations omitted). Here, the Policy's medical exemption does not "allow the government to decide which reasons for not complying with the policy are worthy of solicitude." *See id.* (internal quotations omitted).

Indeed, Appellants concede this point, stating that "[t]he only discretion retained by the Authority when presented with a medical exemption request . . . is to seek a second medical opinion." Appellants' Brief, p. 16. Accordingly, Appellants cannot establish that the Policy is not generally applicable because it is "wrought with individualized exemptions."

Appellants also cite *Fulton* for the proposition that a system of "entirely discretionary exceptions" renders the Policy not generally applicable. *Fulton* involved the City of Philadelphia's standard foster care contract, which provided in relevant part: "**Rejection of Referral**. Provider shall not reject a child or family including, but not limited to . . . prospective foster or adoptive parents, for Services based upon . . . their . . . sexual orientation . . . ***unless an exception is granted by the Commissioner or the Commissioner's designee, in his/her sole discretion***." *Fulton*, *supra*, 141 S. Ct. at 1878 (emphasis added). The City refused to grant any exemption to the Catholic Social Services, a private foster care agency adhering to a religious belief for refusing to certify unmarried or same-sex couples as foster parents. *Id.* at 1871, 1878. Under these facts, the Supreme Court found that the provision created "a system of individual exemptions, made available in this case at the 'sole discretion'' of the Commissioner," and was therefore not generally applicable. *Id.* at 1878.

*Fulton* is completely distinguishable. The Authority's Policy does not contain a "system of individualized exemptions." Rather, the Policy contains a medical exemption and a religious exemption, leaving no room for any "individual exemptions" to be granted on any other basis. Nor does the Policy permit the Authority to exercise "sole discretion" in any manner. To the contrary, as Appellants admit, the Authority did not retain, nor exercise, any discretion with respect to Mr. Manchester's medical exemption. Accordingly, *Fulton* is inapposite.

Moreover, as this Court has already determined, Appellants do not "base their free exercise claim on a contention that, in administering the Policy's religious exemption, the appellees treated their religious beliefs less favorably than the religious beliefs of others." *Brox*, *supra*, 83 F.4th at 98. Appellants make no such claim in their Renewed Motion or in this appeal. Thus, a comparison of any of the religious exemptions requested by Appellants is irrelevant to the general applicability analysis.

The religious exemption process set forth in the Policy requires an analysis of whether the exemption would pose an "undue burden" on the Authority. Unlike *Fulton*, where the City was given "sole discretion" to grant or deny exemption requests, the Authority's decisions regarding religious exemption requests are restricted by the reasonable accommodation standard under state and federal law: whether the employees are "able to perform their essential job functions with a

reasonable accommodation that is not an undue burden on the Authority." (JA p. 86).

This Court has already determined that there was no likelihood of success regarding Appellants' claim under M.G.L. c. 151B. Appellants have not meaningfully challenged the District Court's decision that accommodating Appellants' religious obligations would pose an undue hardship. *Brox*, *supra*, 83 F.4th at 102.

Thus, for purposes of the present appeal, there is no dispute that the Authority has established an undue hardship under c. 151B. It was under that specifically defined standard, implemented in order to comply with state and federal anti-discrimination law, that the Policy was administered. The Authority was not empowered with "sole discretion" to grant or deny any exemption requests.

Each job held by the Appellants required daily interaction in person with employees, customers and/or vendors, in situations where social distancing was not possible. (JA p. 30, ¶ 51). The Authority determined that exemptions from the Policy for these individuals would unreasonably risk their own health and safety, as well as the health and safety of fellow employees, customers and/or vendors. (*Id.* at ¶ 52). Allowing these exemptions would also undermine public trust and confidence in the safety of the Authority's facilities and vessels. (*Id.*) Appellants do

not dispute these critical and objective facts. No evidence demonstrates that the Authority based its decisions on any other standard, or that it exercised discretion in denying any religious accommodation on any other basis.

The Policy does not create a system of "individualized exemptions" and does not permit the Authority to exercise "sole discretion" in granting or denying exemption requests. *Fulton* is inapposite and does not render the Policy not generally applicable.

### 3. <u>Rational Basis Review is Easily Satisfied.</u>

The Policy is neutral and generally applicable, so rational basis review applies and is easily satisfied. "[R]ational basis does not allow courts to second-guess the wisdom of these asserted reasons, so long as they are, as here, properly asserted." *Id.*, citing *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015) (concluding that determination of effectiveness of vaccine requirement was "for the legislature, not the individual objectors"); *Jacobson v. Massachusetts*, 197 U.S. 11, 30 (1905) (explaining that courts should not determine which public health strategy "was likely to be the most effective for the protection of the public against disease").

The District Court properly found that Appellants did not argue that the Policy fails rational basis review. Appellees submit that this, too, creates a waiver. Any argument that the Policy fails rational basis review has been waived.

On appeal, Appellants' only reference to rational basis review is set forth in footnote, where Appellants claim that the Authority's interests in implementing the Policy were "farfetched" and "therefore arbitrary and capricious and fails rational basis review, as it cannot, by definition, ever hope to advance the government's purportedly legitimate interest." Appellants' Brief, p. 37, n.6.

Limiting Covid-19 infection and transmission is indisputably a legitimate government interest. *See Mills, supra,* 16 F.4th at 32. Requiring all employees to be vaccinated, subject to limited exemptions, is rationally related to that interest. *Id.* Rational basis review is easily satisfied.

### 4. The Policy Survives Strict Scrutiny Because it Serves a Compelling Interest and is Narrowly Tailored.

Strict scrutiny does not apply, but even if it did, the Policy would also survive such review. "Stemming the spread of COVID–19 is unquestionably a compelling interest . . . ."[5] *Roman Cath. Diocese of Brooklyn, supra,* 141 S. Ct. at 67; *see also Workman v. Mingo Cnty. Bd. of Educ.,* 419 F. App'x 348, 353 (4th Cir. 2011) ("[T]he state's wish to prevent the spread of communicable diseases

---

[5] Appellants argue that because the Authority was interested in preventing the spread of Covid-19 in the workplace, the Policy somehow fails rational basis review and/or strict scrutiny. However, "the state's wish to prevent the spread of communicable diseases clearly constitutes a compelling interest." *Workman v. Mingo Cnty. Bd. of Educ.,* 419 F. App'x 348, 353 (4th Cir. 2011). Appellants cite no cases standing for the proposition that just because a vaccine is not 100% effective – an impossible goal for any vaccine – that an asserted state interest related to a vaccine policy is somehow lessened or discredited.

clearly constitutes a compelling interest."). "Few interests are more compelling than protecting public health against a deadly virus." *Mills*, *supra*, 16 F.4th at 32.

Additionally, the question is "not whether the [Authority] has a compelling interest in enforcing [the Policy] generally, but whether it has such an interest in denying an exception" to Appellants. *Fulton, supra*, 141 S. Ct. at 541. As set forth above, and as properly found by the District Court, granting eleven (11) indefinite religious exemptions to Appellants would have created a substantially higher risk of infection and transmission than granting a single, time-limited medical exemption to Mr. Manchester.

The Policy is also narrowly tailored. The Authority has established that "measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID." *See Tandon*, *supra*, 141 S. Ct. at 1296-97. In *Mills*, this Court stated that "Maine also reasonably used all the tools available to fight contagious diseases. Its rule, thus, does not fail narrow tailoring." *Mills*, *supra*, 16 F.4th at 32. This Court further explained:

> The available tools roughly fit into two categories. The first category involves pharmaceutical interventions. The second involves non-pharmaceutical interventions. . . . ***The COVID-19 vaccines protect against infection and lower the risk of adverse health consequences, including death, should a vaccinated person become infected. Vaccination also reduces a person's risk of transmitting COVID-19 to others***. . . .
>
> The second category is one in which Maine actively engaged before the mandate and included measures like testing, masking, and social

distancing. Those measures proved to be ineffective in meeting Maine's goals. As to testing, Maine CDC concluded that regular testing cannot prevent transmission given how quickly an infected person can transmit the delta variant and how long accurate testing takes. And Maine experienced multiple COVID-19 outbreaks in healthcare facilities adhering to mandatory masking and distancing rules. Thus, Maine has shown that non-pharmaceutical interventions are inadequate to meet its goals.

*Id.* at 32-33 (emphasis added).

Similarly, before implementing the Policy, the Authority devoted substantial resources to prevent and mitigate the spread of COVID-19, including cleaning measures, social distancing, daily employee health screening, and additional payroll expenses and overtime, among other measures. (JA p. 22, ¶ 12). The Authority also offered a $500 incentive to employees who were vaccinated prior to the Policy being implemented. (JA p. 26, ¶ 28). The Authority spent over $1.6 million on COVID-19 related expenses, including but not limited to personal protection equipment, health screening devices and payroll expenses. (JA p. 22, ¶ 12). Despite these substantial and costly efforts, outbreaks within the Authority's workforce persisted. (JA p. 23, ¶¶ 13-17).

The Authority's non-pharmaceutical interventions were inadequate to meet its goals. Moreover, the Authority spent several months negotiating a mandatory vaccination policy with the Unions, discussing the terms and processes ultimately set forth in the Policy. (*Id.* at ¶¶ 25, 33). The Authority also considered Appellants' requested accommodations of wearing masks and weekly testing. (*Id.* at ¶ 55).

However, the Authority determined that weekly testing for these employees was not an adequate accommodation because it missed infections on days when employees are not tested. (*Id.*) Additionally, mask wearing in lieu of vaccination would not sufficiently mitigate the spread of COVID-19. (*Id.*)[6]

The Policy resulted from this careful, deliberate and interactive process only after other non-pharmaceutical interventions failed. The Authority had no alternative but to implement the vaccine mandate. *Mills*, *supra*, 16 F.4th at 33. The Policy is narrowly tailored.

Additionally, the Policy is not overinclusive. The Policy applies to all Authority employees (unless legitimately exempted) because of the direct interaction they have with other employees and customers. (JA p. 24, ¶ 20). The Policy is focused to achieve the Authority's goal of keeping its employees and customers safe by requiring vaccination of those most likely to come into regular contact with others.

The Policy is also not underinclusive. The fact that Mr. Manchester—an individual employee who was medically contraindicated based on objective evidence from his medical provider relying on CDC guidance—was granted a three-month exemption does not alter the analysis. The alternative approach—

---

[6] Regular policing of mask use on Authority property and/or vessels is difficult and burdensome, and would result in a significant cost, as the Authority would be required to devote personnel to monitoring compliance. (JA p. 12, ¶ 55).

namely, requiring Mr. Manchester to vaccinate in January 2022—would have jeopardized his own health and safety, which would run counter to the Authority's goals. Rather, the Authority granted this time-limited and narrow exemption and, as soon as the three-month period passed – *i.e.*, once it was safe for Mr. Manchester to do so – he was required to become vaccinated. Thus, the Policy does not "fail to prohibit nonreligious conduct that endangers [the Authority's] interests in a similar or greater degree" than religious conduct does. *Lukumi*, *supra*, 508 U.S. at 543.

The Authority's actions in all respects have been narrowly tailored to promote its compelling interest in curbing the spread of COVID-19. Even if strict scrutiny is applied, the Policy survives that level of review.

### B. <u>Appellants Cannot Demonstrate Irreparable Harm.</u>

Courts measure irreparable harm on "a sliding scale, working in conjunction with a moving party's likelihood of success on the merits," *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009), such that "[t]he strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown." *Mass. Coal. of Citizens with Disabilities v. Civ. Defense Agency & Office*, 649 F.2d 71, 75 (1st Cir. 1981). "The burden of demonstrating [the existence of] irreparable harm rests squarely upon the movant."

*Charlesbank Equity Fund II v. Blinds To Go, Inc.,* 370 F.3d 151, 162 (1st Cir. 2004).

Appellants have presented no evidence to meet their heavy burden of establishing irreparable harm. Appellants argue *only*, and generally, that they will suffer irreparable harm because their constitutional rights have been violated.[7] However, as outlined above, as a matter of well-established law, Appellants cannot show that the Policy, or any of Appellees' actions taken pursuant to the Policy, violate Appellants' Free Exercise rights.

Even if Appellants could somehow establish the loss of First Amendment rights – which they cannot – that does not automatically equate to irreparable harm. Rather, in *Mills*, this Court stated that "[e]ven if, arguendo, these claims [including a First Amendment claim] presumptively cause irreparable harm, we think the state has overcome any such presumption." *Mills, supra*, 16 F.4th at 37; *see also Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 349 (2d Cir. 2003) ("[W]e have not consistently presumed irreparable harm in cases involving allegations of the abridgement of First Amendment rights."). As explained above,

---

[7] While Appellants make no claim that their loss of employment would constitute irreparable harm, had they done so, such a claim would fail. "It is black-letter law that 'money damages ordinarily provide an appropriate remedy' for unlawful termination of employment. *Together Employees, supra*, 32 F.4th at 86, *quoting Mills, supra*, 16 F.4th at 36.

the Policy survives under the reasoning set forth in *Mills*. Thus, any "presumption" of irreparable harm has likewise been overcome by the Authority.

In *Kane v. De Blasio*, 19 F.4th 152, 171 (2d Cir. 2021), the Second Circuit expanded on this concept, providing analogous vaccine mandate analysis:

> We do not gainsay the principle that those who are unable to exercise their First Amendment rights are irreparably injured *per se*. But this principle is not applicable to the present case. ***The City is not threatening to vaccinate Plaintiffs against their will and despite their religious beliefs, which would unquestionably constitute irreparable harm***. Plaintiffs instead face ***economic harms***, principally a loss of income, while the City reconsiders their request for religious accommodations. It is well settled, however, that adverse employment consequences, like the loss of income accompanying a suspension without pay, are not the type of harm that usually warrants injunctive relief because economic harm resulting from employment actions is typically compensable with money damages. . . . . ***Because those harms could be remedied with money damages, and reinstatement is a possible remedy as well . . . they do not justify an injunction reinstating Plaintiffs***. . . .

*Id.* (emphasis added). In *Kane*, the Second Circuit distinguished other pandemic era cases that found irreparable harm based on First Amendment violations, *e.g.*, *Roman Catholic Diocese*, *supra*, 141 S. Ct. at 67-68, as "[t]hose cases involved restrictions on worshippers' rights to attend religious services and so directly prohibited them from freely exercising their religion." *Id.* at 172. "Not so here. Plaintiffs are ***not required to perform or abstain from any action that violates their religious beliefs***. Because Plaintiffs have refused to get vaccinated, they are on leave without pay. The resulting loss of income undoubtedly harms Plaintiffs,

but that harm is not irreparable." *Id.* (emphasis added)[8]; *see also Together*

*Employees*, *supra*, 32 F.4th at 87 (holding that "[appellants] are not required to

perform or abstain from any action that violates their religious beliefs" as "MGB is

not requiring appellants to be vaccinated involuntarily. Instead, "[b]ecause

[appellants] have refused to get vaccinated, they [have been fired]. The resulting

loss of income undoubtedly harms [them], but that harm is not irreparable.").

Here, Appellants have alleged economic harms – losing income and being

without a job – which can be remedied through monetary damages, including

backpay. The Authority never forced any employee, including Appellants, to take

the vaccine involuntarily. Rather, the Authority gave the Appellants the choice of

either complying with the Policy and getting vaccinated, or not continuing to work

for the Authority. The resulting "harm" to the Appellants is not "irreparable" given

the Appellants ability to seek monetary damages as a remedy.

Appellants cannot establish that they will suffer irreparable harm.

---

[8] Appellants confirmed this lack of irreparable harm in their Brief by stating that they are seeking "compensate[ion] for all eleven plaintiffs with backpay for the periods during which they were and have been wrongfully out of work." Appellants' Brief, at p. 44. "Preliminary injunctions are appropriate only to prevent *prospective* harm until the trial court can decide the case on the merits. Plaintiffs' request for backpay is (as the term *backpay* suggests) entirely retrospective. We would thus deny Plaintiffs' request for backpay at this stage even if Plaintiffs had shown that their economic harms were irreparable." *Kane*, *supra*, 19 F.4th at 172 n.20.

## C.   The Balance of Equities and Public Interest Favor Denial of the Requested Injunction.

COVID-19 is an infectious disease that can cause immediate severe illness, long-term ongoing health problems or death. *Harris v. Univ. of Massachusetts, Lowell*, *supra*, 2021 WL 3848012 at *2 (D. Mass Aug. 27, 2021). "There is no question that limiting the spread of COVID-19 and protecting at-risk individuals from exposure to the virus are critically important public policies." *U.S. v. Donziger*, 2020 WL 5152162, *2 (S.D.N.Y. 2020). The balance of equities tips in the Authority's favor given the strong public interest they are promoting—protecting the health and safety of their crews and passengers from the spread and severity of Covid-19. *Harris*, *supra*, 2021 WL 3848012, at *8.

The Authority justifiably implemented the Policy as a critical tool in preventing the spread of COVID-19 on its vessels, and minimizing sickness, hospitalizations, and death amongst its workforce and the public it serves. Appellants are not risking only their own health in seeking to avoid vaccination – their decision necessarily bears on the health of other employees and the public. *See Klaassen I*, *supra*, 2021 WL 3073926, at *43.

As stated in *Mills*, "Maine's interest in safeguarding its residents is paramount. While we do not diminish the appellants' liberty of conscience, we cannot find, absent any constitutional or statutory violation, any error in the district

court's conclusion that the rule promotes strong public interests and that an injunction would not serve the public interest." *Mill*s, *supra*, 16 F.4th at 37.

The public interest here weighs decisively against an injunction that would elevate the highly individualized interests of Appellants over the Authority's efforts to protect the health and well-being of the millions of others who rely on the Authority. The balance of equities and public interest favor denial of the preliminary injunction.

## II.     The District Court Did Not Abuse Its Discretion By Taking Judicial Notice Of Certain Facts Relative To COVID-19.

This Court reviews a trial court's decision to take judicial notice under Fed. R. Evidence Rule 201 for abuse of discretion. *U.S. v. Bello*, 194 F.3d 18, 23 (1st Cir. 1999). Fed. R. Evid. 201(b) states:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Appellants take issue with the District Court's "judicial notice" of certain information leading to the following fact: "The Vaccines are extremely effective." Aside from being contrary to common sense and well-accepted knowledge our society gained during the pandemic, this Court has already rejected a similar argument raised during Appellants' first appeal:

> [T]he record includes a CDC fact-sheet, to which the District Court referred, which states that 'people who are up to date on vaccines,

including booster doses when eligible are likely to have stronger protection against COVID-19 variants, including Omicron.' And regardless of whether the statements in this document are in fact true, they are more than sufficient to show the Authority had a 'plausible justification' for adopting the Policy, which is all that is required to satisfy rational basis review. *See A.C. by Waithe v. McKee*, 23 F.4th 37, 46 (1st Cir. 2022); *see also Mills*, 16 F.4th at 32; *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 67 ('Stemming the spread of COVID–19 is unquestionably a compelling interest.').

*Brox*, *supra*, at 101.

Here, the Authority had a plausible justification for adopting the Policy and relied on available public health data to draw the conclusion that vaccines are, in fact, safe and effective. The District Court properly cited to facts generally known within the territorial jurisdiction of the court, or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. This is not an abuse of discretion, and Appellants' argument fails. *See, e.g.*, *Pietrangelo v. Sununu*, 2021 WL 4487850, at *1 n.1 (1st Cir. Oct. 1, 2021) (taking judicial notice of "state and federal vaccine distribution data" at preliminary injunction stage); *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of information on CDC's website); *see also Mills*, *supra*, 16 F.4th at 26; *Garrett v. Murphy*, 17 F.4th 419, 433 (3rd Cir. 2021) (court takes judicial notice of effective COVID-19 vaccines).

Information concerning the pandemic, and its devastating effect, has been widely available from multiple, reliable sources throughout the pandemic. The

District Court's citation to the CDC's website for the basic proposition that COVID-19 vaccines are extremely effective is capable of accurate and ready determination from these sources. The District Court did not abuse its discretion in taking such judicial notice.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants-Appellees Woods Hole, Martha's Vineyard and Nantucket Steamship Authority and Janice Kennefick, respectfully request that this Honorable Court affirm the Order of the District Court.

Respectfully submitted,

WOODS HOLE, MARTHA'S VINEYARD
AND NANTUCKET STEAMSHIP
AUTHORITY, AND JANICE KENNEFICK,
IN HER OFFICIAL CAPACITY AS
DIRECTOR OF HUMAN RESOURCES AT
WOODS HOLE, MARTHA'S VINEYARD
AND NANTUCKET STEAMSHIP
AUTHORITY,

By their attorneys,

  /s/ Ryan Jaziri
Keith H. McCown
Court of Appeals Bar No. 5859
Ryan W. Jaziri
Court of Appeals Bar No. 1203310
Jeffrey T. Collins
Court of Appeals Bar No. 1139870
MORGAN, BROWN & JOY, LLP
200 State Street, Suite 11A
Boston, MA 02109-2605
(617) 523-6666
kmccown@morganbrown.com
rjaziri@morganbrown.com
jcollins@morganbrown.com

Dated: June 13, 2024

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
      32(a)(7)(B) because this brief contains 9,722 words, excluding the parts of
      the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
      32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because
      this brief has been prepared in a proportionally spaced typeface using
      Microsoft Word in Times New Roman, 14 point font.

                                        */s/ Ryan Jaziri*
                                        Attorney for Appellees


Dated: June 13, 2024

## <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that on this date, June 13, 2024, the foregoing Brief for the Defendants/Appellees was filed electronically with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following party is registered as an ECF Filer and that he will be served by the CM/ECF system and that a copy of the foregoing document has also been served on him via electronic mail on this date:

   Patrick K. Daubert, Esq.
   Daubert Law, PLLC
   100 Independence Drive
   Suite 7-591
   Hyannis, Massachusetts 02601
   DaubertLaw@iCloud.com

       */s/ Ryan Jaziri*
       Attorney for Appellees